U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

AUG 31 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus  　　　　　　　　　　　　　　CRIMINAL NO. 04-50085-01
　　　　　　　　　　　　　　　　　　JUDGE TOM STAGG
CONTRELL COLEMAN

## MEMORANDUM RULING

Before the court is Contrell Coleman's ("Coleman") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See Record Document 53. Based on the following, Coleman's motion is **DENIED**.

### I. BACKGROUND

**A.　Factual Background.**

On January 6, 2004, the Shreveport Police Department responded to a call concerning a man who was armed with a shotgun and was selling drugs in front of 253 St. Luke Street[1] in Shreveport, Louisiana. When the officers arrived, they did not see anyone on the street so they knocked on the door of an apartment located at

---

[1] Coleman asserts that Corporal Brown of the Shreveport Police Department testified at trial that the call identified only the 200 block of St. Luke, not 253 St. Luke Street. However, this does not change the court's analysis.

253-A St. Luke Street. A woman later identified as Jennifer Page ("Page") opened the door, and officers smelled marijuana. They also noticed a marijuana cigar inside the apartment. Coleman was sitting on a couch to the left of the front door.

Page told the officers that the apartment was hers. No one claimed the marijuana cigar, so the officers advised everyone present of their Miranda rights and asked Page for permission to search the apartment. Page consented to the search and she and Coleman, along with another man who was present in the apartment, were placed in the back seat of a police car while officers waited for a narcotic detecting dog.

After the dog arrived and began the search, it alerted to a dresser in the master bedroom. On top of the dresser officers found a cigar box containing an electronic scale, some white residue, and identification of Page. In the top right drawer of the dresser officers found a pistol on top of two magazines loaded with ammunition. Coleman's identification card was found underneath the magazines. The drawer below that contained two clear bags filled with crack cocaine. The rocks were individually packaged, as is typical for individual street sales. Officers felt that all of this contraband combined demonstrated distribution.

In the closet of the second bedroom, later identified as the children's bedroom, the officers found a loaded semi-automatic assault rifle. A woman was also found hiding in the closet.

When Coleman was booked, he stated that he lived at 253-A St. Luke. Coleman and Page both occupied the master bedroom where the drugs were found. Page's two children also lived at the apartment.

Page testified at trial that the cocaine found by the officers belonged to Coleman. She stated that Coleman kept the pistol in the bedroom and would take the gun with him when he left the apartment. She said she had never seen the rifle found in the closet and did not know who placed it in the closet. She further stated that she had not seen anyone else bring the crack into the apartment or put the gun in the dresser. She also said that she would not let the defendant sell drugs out of the apartment. She admitted that she was testifying to benefit herself but indicated that no one had promised her anything.

**B.      Procedural History.**

Coleman was indicted on four counts. He was charged in count one with possession with intent to distribute 50 grams or more of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). Count two charged Coleman with possession of two firearms, the assault rifle and the pistol, during and

in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Count three charged him with being a felon in possession of the same firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Count four was a forfeiture count.

On August 23, 2004, a jury found Coleman guilty of count one, count two as to the pistol only, and count three as to the pistol and ammunition. On December 16, 2004, the defendant was sentenced to a total of 295 months imprisonment followed by a 60 month term of supervised release.

On August 4, 2005, the Fifth Circuit affirmed Coleman's conviction. The Supreme Court denied his petition for writ of certiorari on December 5, 2005. The instant motion was filed on December 1, 2006.

## II. LAW AND ANALYSIS

In this motion, Coleman claims that he was denied effective assistance of counsel because his attorney failed to file a motion to suppress the evidence obtained from his 253-A St. Luke apartment. He argues that the officers violated his Fourth Amendment rights when they knocked on the door of the residence without probable cause. Furthermore, in an amendment to his motion, Coleman asserts that the trial testimony of Page, the prosecution's lead witness, was false. He attaches an

affidavit by Page in which Page states that she lied when she testified at trial, and that all of the drugs were actually hers.

A.  **Ineffective Assistance Of Counsel.**

Ineffective assistance of counsel claims should generally be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255, rather than on direct appeal, as the record is not fully developed. See United States v. Cornett, 195 F.3d 776, 781 n.2 (5th Cir. 1999). Therefore, this court will address the merits of Coleman's ineffective assistance of counsel contentions.

To prevail on a claim of ineffective assistance of counsel, Coleman must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the <u>Strickland</u> test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." <u>Murray v. Maggio</u>, 736 F.2d 279 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. To satisfy the prejudicial prong of the <u>Strickland</u> test in the context of a non-capital sentencing proceeding, Coleman must establish "a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh." <u>United States v. Seyfert</u>, 67 F.3d 544, 548 (5th Cir. 1995). If Coleman fails to establish either prong of the <u>Strickland</u> test, then his claim of ineffective assistance of counsel must fail.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is <u>meritorious</u> and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986) (emphasis added). The Fifth Circuit has repeatedly held that a " meritorious" motion is one that would have likely been granted, as opposed to one for which there is merely some good faith basis to

6

pursue. See Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005) (" We have held that 'counsel's failure to move to suppress evidence, when the evidence would have been suppressed if objected to, can constitute deficient performance.'") (emphasis added); see also Martin v. Maxey, 98 F.3d 844, 848 (5th Cir. 1996) (same). Therefore, in order to show ineffective assistance of counsel due to his attorney's failure to assert the motion to suppress, Coleman must show that the motion to suppress would have been meritorious.

Coleman's argument is essentially that it was improper for the officers to knock on the door of his apartment without reasonable suspicion. This claim lacks merit. A "knock and talk" does not trigger Fourth Amendment scrutiny when the occupants respond voluntarily. See United States v. Ervin, 907 F.2d 1534, 1539 n. 7 (5th Cir. 1990). The Fifth Circuit has recognized that the "knock and talk" strategy is a "reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity," but do not have reasonable suspicion to obtain a search warrant. United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001). Therefore, the officers violated no Fourth Amendment rights when they knocked on the door of 253-A St. Luke, and Page

voluntarily opened the door. A motion to suppress on such basis would not have been meritorious.

Coleman also asserts that Page's consent in opening the door, and her consent for the officers to search the apartment, were not free and voluntary. However, Coleman's allegations do not indicate that there was any reason for Page to believe that she did not have the option of not answering the door. Furthermore, Coleman himself advised Page that she did not have to give consent to search the apartment before Page gave the officers such consent. Therefore, the court finds that if Coleman's attorney had filed a motion to suppress on such basis, it also would not have been meritorious. Accordingly, Coleman's ineffective assistance of counsel claim is **DENIED**.

**B.     Page's Recanted Testimony.**

In the amendment to his original section 2255 motion, Coleman argues that the prosecutor knowingly presented perjured testimony by allowing and encouraging Page to testify that the drugs found in the apartment belonged to Coleman. He has provided an affidavit executed by Page in which she states that the drugs were in fact hers, and that the prosecutor was aware of this when they offered her favorable treatment in exchange for her testimony at Coleman's trial. Page further states in

her affidavit that the police told her that they would take her children and prosecute her if she did not implicate Coleman.

Even when petitioners who assert claims of recanting witnesses provide affidavits from those witnesses, the affidavits are viewed with "extreme suspicion." Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005); United States v. Adi, 759 F.2d 404, 408 (5th Cir. 1985). Page's recanted testimony is indeed suspicious considering the circumstances. It is not surprising, considering her relationship with Coleman, that now that she has escaped prosecution for the drugs found in their apartment, she is willing to take the blame in an effort to help Coleman obtain relief from his sentence. The court gives little weight to the statement of Page, who is either lying now in this sworn statement, or was lying under oath at Coleman's trial.

In addition, under the Fifth Circuit's general standards, a witness's recanted testimony warrants a new trial only when: 1) such evidence is discovered after trial; 2) the failure to learn of the new evidence was not caused by petitioner's lack of due diligence; 3) the evidence is not merely cumulative or impeaching; 4) the evidence is material; and 5) a new trial would probably produce a new result. See United States v. Nixon, 881 F.2d 1305, 1311 (5th Cir. 1989). Even if each of the other

elements were met, Coleman has not established the last element: that a new trial would likely produce a different result.

Apart from Page's testimony, the evidence supports a finding that the drugs were either Coleman's, or at the very least belonged to both Coleman and Page. Coleman does not rebut the fact that the drugs and the guns were found in the apartment where he lived, in a bedroom he shared with Page. His identification card was found in a drawer with a pistol and two magazines loaded with ammunition, and bags of crack cocaine were found in a drawer just below. In addition, the caller had earlier informed police that a man armed with a gun was selling drugs in front of the apartment, not a woman. Even if Page's conflicting statements were presented in a new trial, it is unlikely that the trial would produce a different result.

Furthermore, "[i]t is one of the oldest established rules of Anglo-American Jurisprudence that the jury is the arbiter of credibility of witnesses." United States v. Cravero, 530 F.2d. 666, 669 (5th Cir.1976). The veracity of a witness is to be examined by the jury through cross-examination, and the witness's credibility should be determined by the properly instructed jury. See id. at 670. Page admitted that she was testifying to benefit herself, and this consideration was factored into the jury's determination of Coleman's guilt. After careful review of Coleman's motion and

the supporting affidavit, the court finds that the credibility of Page was properly determined by the jury at Coleman's trial, and that Coleman's motion should be denied.

### III. CONCLUSION

For the above cited reasons, Coleman's section 2255 motion is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 31st day of August, 2007.

_____
JUDGE TOM STAGG